# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MILAN E. KUNZELMANN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff <br><br> v. <br><br> FOREFRONT DERMATOLOGY, S.C. and FOREFRONT MANAGEMENT, LLC <br><br> Defendants. | Case No.: 1:21-cv-980 <br><br><br> CLASS ACTION COMPLAINT <br><br><br> <u>JURY TRIAL DEMANDED</u> |

Plaintiff Milan E. Kunzelmann ("Plaintiff") on behalf of herself and all other similarly situated, by and through the undersigned counsel, brings this action against Forefront Dermatology, S.C. and Forefront Management, LLS (collectively "Forefront" or "Defendants"). Plaintiff alleges as follows, upon personal knowledge of facts pertaining to herself, and on information and belief as to all other matters.

## I.    SUMMARY OF THE ACTION

1.    On July 8, 2021, Forefront issued a press release acknowledging that between May 28, 2021 and June 4, 2021, its network was breached by hackers, who then obtained access to patient files. Forefront further acknowledged that this data breach (the "Forefront Data Breach") exposed files that "may have included patient names, addresses, dates of birth, patient account numbers, health insurance plan member ID numbers, medical record numbers, dates of service, accession numbers, provider names, and/or medical and clinical treatment information."

2.     Plaintiff brings this action on behalf of Milan E. Kunzelmann and on behalf of a the classes of consumers defined herein (the "Classes"), the members of which (the "Class Members") had their personal identifying information ("PII") and Personal Health Information ("PHI"), including, but not limited to patient names, addresses, dates of birth, patient account numbers, health insurance plan member ID numbers, medical record numbers, dates of service, accession numbers, provider names, and/or medical and clinical treatment information, disclosed to unauthorized parties as a result of the Forefront Data Breach.

3.     Despite identifying the Forefront Data Breach no later than June 4, 2021, Defendants waited over a month before they began notifying consumers – patients of Forefront – that the Forefront Data Breach had occurred. Forefront acknowledges that the sensitive PII of more than 2.4 million consumers may have been exposed in the Forefront Data Breach.

## II.     PARTIES

4.     Plaintiff Milan E. Kunzelmann is a citizen of Missouri and resides in Camdenton, Missouri. Mr. Kunzelmann is a patient of the Forefront Dermatology Clinic located at 5721 Osage Beach Parkway in Osage Beach, Missouri. On July 9, 2021, Mr. Kunzelmann received an email from Forefront Dermatology disclosing that, *inter alia*, "a data security incident that may have involved some of your data" had occurred." As a result of the Forefront Data Breach, Mr. Kunzelmann has taken the steps to secure his PII. Plaintiff has continued monitoring bank statements, credit card statements, and other financial information since being informed of the Forefront Data Breach.

5.     Defendant Forefront Dermatology, S.C. is a health care provider, focusing on dermatology services, located at 801 York Street, Manitowoc, WI and incorporated in Wisconsin.

6.     Defendant Forefront Management, LLC is a Delaware company that does business in Wisconsin.

## III.    JURISDICTION AND VENUE

7.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy, exclusive of interest and costs, exceeds the sum value of $5,000,000.00, consists of putative class membership of greater than 100 members, and is a class action in which some of the members of the Class, including the Plaintiff, are citizens of states different than that of Defendants.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants are authorized to conduct business within this District, are headquartered in this District, have intentionally availed themselves of the laws in this District, and conduct substantial business, including acts underlying the allegations of this complaint, in this District.

## IV.    FACTUAL ALLEGATIONS

### A.    Forefront Dermatology

9.    Forefront operates dermatology centers in twenty-one states, Alabama, Arizona Colorado, Florida, Georgia, Illinois, Indiana, Iowa, Kentucky, Maryland, Michigan, Minnesota, Missouri, Montana, New Jersey, North Carolina, Ohio, Oklahoma, Pennsylvania, Virginia, Washington, D.C., and Wisconsin. Forefront claims to have "more than 195 board-certified dermatologists" working out of at least 114 different centers throughout the states in which it operates.[1]

10.    Forefront provides a wide range of medical care, including treatment for hair loss, acne, cosmetic treatments such as BOTOX®, genital warts, and treatment for various forms of skin cancer.[2] In order to get services from Forefront, Defendants require consumers to provide a broad range of PII and PHI for Forefront, including, but not limited to: patient names, addresses, dates of birth, health insurance plan member ID numbers, provider names, and/or medical and

---

[1]    https://forefrontdermatology.com/about-us/, last visited August 18, 2021.

[2]    https://forefrontdermatology.com/conditions-treatments/, last visited August 18, 2021.

3

clinical treatment information, and account numbers. In addition, Defendants collected and stored additional PII and PHI relating to Class Members including, but not limited to, patient account numbers, medical record numbers, dates of service, and accession numbers. Defendants further collected and stored financial and payment information, such as credit card information.[3]

11.     In the process of collecting this PII and PHI, Defendants acknowledge that:

Forefront Dermatology is required to:

- Maintain the privacy of your health information;

- Provide you with a notice of the legal duties and privacy practices regarding PHI collected and maintained about you;

- Notify you if you are affected by a breach of unsecured PHI; and

- Abide by the terms of this notice.[4]

12.     While Forefront discloses that consumer PHI may be disclosed to third parties for specific, limited purposes, Forefront also assures consumers that:

We may use or disclose your PHI as described above without your authorization. ***Other uses and disclosures of PHI not described in this Notice will be made only with your authorization***. We will obtain your written authorization for (i) most uses and disclosures of psychotherapy notes; (ii) most uses and disclosures of PHI for marketing purposes, as defined by HIPAA; and (iii) disclosures that constitute a sale of PHI, as defined by HIPAA. If you give us authorization to use or disclose your PHI, then you may revoke that authorization, in writing, at any time. Your revocation will be effective upon receipt, but will not be effective to the extent that Forefront Dermatology or others have acted in reliance upon the authorization.

13.     (emphasis added). [5] Defendants further assure consumers that "Forefront Dermatology and its affiliates (hereafter, "Forefront Dermatology," "we," or "our") ***respect your***

---

[3]     https://forefrontdermatology.com/incidentnotice/ and https://forefrontdermatology.com/privacy-policy/, last visited August 18, 2021.

[4]     https://forefrontdermatology.com/wp-content/uploads/2021/04/Forefront-Affiliated-Practices-New-Patient-Packet-2021-1.pdf, and https://forefrontdermatology.com/wp-content/uploads/2021/04/Forefront-Dermatology-Affiliated-Practices-NOPP-1.pdf, last visited August 18, 2021.
[5]     https://forefrontdermatology.com/wp-content/uploads/2021/04/Forefront-Affiliated-Practices-New-Patient-Packet-2021-1.pdf and https://forefrontdermatology.com/wp-content/uploads/2021/04/Forefront-Dermatology-Affiliated-Practices-NOPP-1.pdf, last visited August 18, 2021.

4

*privacy and are committed to protecting it*. . . ."[6] (emphasis added). Each of these assurances, made to consumers in various agreements, functioned to provide consumers with a high level of comfort that Defendants were taking adequate steps to protect their sensitive PHI and PII. Contrary to these representations, Forefront was failing to protect consumer PII and PHI, and, even when it discovered that a breach of its systems had occurred, Forefront took over a month to "investigate" the breach before it began warning consumers, thus preventing consumers from taking necessary steps to protect themselves.

      **B.**      **The Forefront Data Breach**

      14.      As Forefront now acknowledges, between May 28, 2021 and June 4, 2021, an unknown party breached Forefront's IT system, enabling that party to access the PII and PHI of more than 2.4 million Class Members across twenty-one states. Forefront asserts that it first became aware of the Forefront Data Breach on June 4, 2021, at which point Forefront took its network offline in order to investigate the breach. Forefront claims that it "promptly launched an investigation and notified law enforcement." However, that investigation resulted in vague conclusions that "unauthorized parties gained access to Forefront Dermatology's IT network *between* the dates of May 28, 2021 and June 4, 2021 and accessed *certain files* that contain information *pertaining to some patients*." (emphasis added).

      15.      Forefront claims that it completed its investigation of the Forefront Data Breach on June 24, 2021. However, it was only on July 8, 2021, more than a month after Forefront discovered the breach and more than two weeks after it "concluded its investigation," that Forefront began disclosing the breach to Plaintiff and Class Members via a press release:

**Forefront Dermatology, S.C. Identifies and Addresses Data Security Incident**

**MANITOWOC, WI (JULY 8, 2021)** – Today, Forefront Dermatology, S.C. and its affiliated practices ("Forefront Dermatology") announced that it identified and addressed a data security incident and now is notifying individuals, including patients and employees, whose information may have been involved.

---

[6]      https://forefrontdermatology.com/privacy-policy/, last visited August 18, 2021.

On **June 24, 2021**, Forefront Dermatology **concluded** its investigation of an intrusion into its IT network by unauthorized parties and determined that the incident resulted in unauthorized access to certain files on its IT systems that contain patient and employee information. The company **first identified the intrusion on June 4, 2021**, and immediately took its network offline to protect the information it maintains and secure its systems. In addition it promptly launched an investigation and notified law enforcement.

**The investigation determined that unauthorized parties gained access to Forefront Dermatology's IT network between the dates of May 28, 2021 and June 4, 2021** and accessed certain files that contain information pertaining to some patients. **This information may have included patient names, addresses, dates of birth, patient account numbers, health insurance plan member ID numbers, medical record numbers, dates of service, accession numbers, provider names, and/or medical and clinical treatment information.**

There is no evidence that patient Social Security numbers, driver's license numbers, or financial account / payment card information were involved in this incident.

While the investigation found evidence that only a small number of patients' information was specifically involved, **Forefront Dermatology could not rule out the possibility that files containing other patients' information may have been subject to unauthorized access. Patients whose information may have been involved in this incident are being notified by Forefront Dermatology and are advised to review the statements they receive from their health care providers and health insurance plan.** If individuals see services they did not receive, they should contact the provider or health plan immediately. To help prevent something like this from happening again, Forefront Dermatology is enhancing its security protocols.

Forefront Dermatology **has begun** mailing and emailing **notice letters to patients whose information may be involved in this incident** and established a dedicated, toll-free call center to help answer patient questions. Additional information is available at https://forefrontdermatology.com/incidentnotice/ or by calling Forefront Dermatology's dedicated, toll-free incident response line at 855-899-4166, Monday through Friday, between 8:00am to 8:00pm, Central Time.

16. While Forefront asserted that it had no evidence that the breach included Social Security numbers, driver's license numbers, or financial account and/or payment information, Defendants have stopped short of assuring consumers that this ultrasensitive PII was adequately protected and was not breached, instead suggesting only that they have not established that it was, in fact, breached.

17. Defendants also reported the Forefront Data Breach to the Office for Civil Rights of the U.S. Department for Health and Human Services ("HHS") for the first time on July 8, 2021.[7]

---

[7]     https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf, last visited on August 18, 2021.

In its report to HHS, Forefront acknowledged that the breach affected 2,413,553 consumers, making it among the largest data breaches of a health care provider.[8]

18.     Thereafter, Forefront began providing notice to Plaintiff and Class Members in a form that appears designed to downplay the significance of the data breach. For example, in a July 9, 2021 email sent to Plaintiff by Forefront, Forefront stated, in bold, underlined type: "**While our investigation did not find evidence that your information was specifically involved**, we could not rule out the possibility that files containing some or all of our patient information may have been subject to unauthorized access as a result of this incident." Forefront further noted, again in bold and underlined type that "**Forefront has no evidence that Patient Social Security numbers, driver's license numbers, or financial account/payment card information were involved in this incident**." The formatting of this notice appears to downplay the significance of the breach, especially given Defendants acknowledgement to HHS that more than 2.4 million consumers were affected by the Forefront Data Breach.

19.     Forefront has also established a website with information about the Forefront Data Breach, but the website provides no additional assistance to Plaintiff or Class Members and does not, for example, identify any services that it will provide to Class Members, such as data theft protection software, instead only advising Class Members to "review the statements they receive from their health care providers and health insurance plan. If individuals see services they did not receive, they should contact the provider or health plan immediately."[9] Notably, the website appears to downplay the significance of the Forefront Data Breach, referring to unauthorized access to "certain files that contain information pertaining to some patients."[10] This sharply contrasts with Forefront's report to HHS, in which it acknowledges that more than 2.4 million patients were impacted by the Forefront Data Breach.

---

[8]      https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf, last visited on August 18, 2021.
[9]      https://forefrontdermatology.com/incidentnotice/, last visited on August 18, 2021.
[10]     *Id.*

7

**C.** **Defendants' Failure to Timely Disclose the Forefront Data Breach Left Consumers Exposed**

20.     Defendants acknowledged that the Forefront Data Breach occurred between May 28, 2021 and June 4, 2021, meaning that hackers had access to Forefront's systems, and consumers' data, for as much as eight days. Based on statements by Forefront, it appears that Forefront cannot determine (1) when the breach occurred, (2) how long it continued, and (3) the number of Forefront patients whose sensitive PII and PHI was accessed as a result of the Forefront Data Breach.

21.     In disclosing the Forefront Data Breach on July 8, 2021, Defendants warned consumers that "[i]f individuals see services they did not receive, they should contact the provider or health plan *immediately* (emphasis added)." However, Forefront dithered for more than two weeks between June 24, 2021, when Forefront "concluded its investigation of an intrusion into its IT network by unauthorized parties and determined that the incident resulted in unauthorized access to certain files on its IT systems that contain Forefront patient information" and July 8, 2021 when Defendants began informing Class Members of the Forefront Data Breach.

22.     Forefront's dithering between June 4, 2021 and July 8, 2021 wasted precious weeks in which consumers could and should have been taking affirmative steps to protect themselves from identity theft, preventing consumers from taking steps to insulate themselves from the risk of harm caused by misuse of their PII by hackers. Just as they were aware of the substantial efforts made by hackers to attack health care providers, Defendants were aware that, for consumers, time is of the essence in dealing with the fallout from a breach that exposes their PII. Once a consumer's data has been compromised, there are numerous steps that they can take to protect themselves, as noted, for example, in an article on personal cybersecurity, a bank provides a list of affirmative steps to be taken after a consumer's data is compromised:

**7 STEPS TO TAKE AFTER YOUR PERSONAL DATA IS COMPROMISED ONLINE**

Unfortunately, data breaches have become a common feature of modern life in our always-connected world of online services; everyone in the U.S. is at risk of having their data stolen. However, even if your data is compromised in a data breach, you don't have to become a victim. There are several steps you can take to contain the damage and keep your personal finances, credit score, and identity safe from criminals.

If you find out that a company you do business with – or an online service that you use – has suffered a data breach, here *are a few steps to take right away*:

## A.     1. Change your passwords

It's a good idea to keep changing your password on a regular basis, but ***in the aftermath of a data breach, it's especially important to change your passwords to something strong***, secure, and unique. And you should have multiple "passwords," not just one. Do not use the same password for all of your online accounts. In general a "strong" password is at least 8 characters with a mixture of letters, numbers, and symbols. Consider using a password manager to help generate and keep track of your passwords.

## B.     2. Sign up for two-factor authentication

In addition to changing your passwords, sign up for two-factor authentication (also known as "2FA" or "two-step verification") wherever possible. This is an added layer of security for your account logins, and many services such as Gmail and Facebook now offer it. With two-factor authentication, your online account will require you to enter an additional level of identification to access your account – such as a code texted to your phone. This means that even if hackers get your email and password, they can't get into your account without that second factor of identity verification.

## C.     3. Check for updates from the company

If your data is involved in a major data breach, the company will likely post ongoing updates and disclosures about which customers were affected. For example, after a recent Facebook data breach, the company automatically logged out the users whose accounts were affected and sent them messages via the platform about what had happened and what to do next. After the Equifax data breach, the [Federal Trade Commission (FTC) offered a series of advisories](#) and steps that people could take to protect themselves.

## D.     4. Watch your accounts, check your credit reports

After a data breach, ***it's essential to be vigilant and pay extra attention to your account activity – that includes your account at the company that suffered the breach, as well as your bank account and other financial accounts***. Read your credit card statements and watch for suspicious transactions. Also, sign up for your [free annual credit report](#) to check your credit reports from each of the three credit reporting bureaus.

## E.     5. Consider identity theft protection services

If you want additional peace of mind, you can consider signing up for identity theft protection services. However, these services are not cheap, and you can do many of the actions yourself. Often when there is a significant data breach, the company involved will give affected customers a free year of credit monitoring.

**F.     6. Freeze your credit**

Another step you can take, whether you're affected by a data breach or not, is to freeze your credit. You can do this by contacting each of the three credit bureaus (Equifax, Experian, and TransUnion) and asking to freeze your credit. There is no cost to freeze your credit, and it will prevent any new credit accounts from being opened in your name. Even if identity thieves have access to all of your personal data, they can't open new accounts under your name if your credit is frozen. The only drawback of freezing your credit is that it prevents you from applying for new credit too – so don't do it if you are expecting to need a new car loan, home loan, or credit card account. You can un-freeze your credit at any time.

**G.     7. Go to IdentityTheft.gov**

If you are affected by a data breach, there is a government website that can help you assess the situation and understand your options for what to do next. There are a variety of resources with tips and advice on what to do if your personal information was lost or stolen.

Being affected by a data breach can be alarming, and in the worst-case scenario, it can lead to identity theft and financial complications. But if you know what to expect, and you take a few simple steps to protect yourself and stay vigilant, you can overcome the risks and hassles of a data breach.

https://www.fultonbank.com/Education-Center/Privacy-and-Security/personal-data-breach-tips,

last visited August 18, 2021. Of course, with a data breach, knowledge is power and here, for more than a month after Defendants discovered the Forefront Data Breach, they hid its existence and extent from Plaintiff and Class Members, consumers and patients whose data was entrusted to Defendants and whose data, by law, they are required to protect.

**D.     Medical Records Are Uniquely Valuable to Hackers**

23.     In 2018, over 400 breaches targeting medical data were reported to the Inspector General of the Department of Health and Human Services.[11] That figure represented a substantial increase from the year before. The steady growth of hacks of healthcare entities is no surprise and can be tied to two significant factors, (1) the failure of healthcare entities, like Forefront, to adequately protect patient data and (2) the substantial value of medical records, which include a broad range of PII and PHI.   Indeed, the high value placed on medical records is, according to the

---

[11]     https://www.cbsnews.com/news/hackers-steal-medical-records-sell-them-on-dark-web/ and
https://www.advisory.com/en/daily-briefing/2019/03/01/hackers last visited on August 18, 2021.

head of investigations at the HHS Office of Inspector General, a reflection of the "treasure trove" of data contained within them.[12]

24.     The continued vulnerability of the health care industry to hacking is widely recognized within the health care industry.  An article published on the website of Advisory Board, a company that advises health care providers, health insurance companies and others on issues critical to the health care industry, recognized that "the cyber threats we face are growing in sophistication and magnitude and becoming more difficult to combat."[13] The article further noted that "[a]s a result, every health care organization needs to have a strong strategy in place to mitigate cyber risk." Large health care providers like Forefront are well aware of the risks data breaches pose to their patients, especially because both the size of their patient base and the fact that the PHI and PII that they collect and maintain from their patients is profoundly valuable to hackers. Indeed, a 2017 survey by Accenture determined that 50% of healthcare data breach victims eventually suffered medical identity theft, resulting in an average of $2,500 in out of pocket costs per patient.[14] That same survey also highlighted the importance of rapid disclosure of healthcare data breaches as it noted that "half of the survey respondents reported that they learned of the breach themselves – as opposed to an official company or law enforcement notification – after they had been alerted to an error on their benefits explanation, credit card statement, or similar documents."[15]

25.     Even where hacked healthcare data is not used to steal identities, its theft poses substantial harm to consumers. In February 2021, hackers published "extensive" patient information hacked from two U.S. hospital groups in an extortion effort.[16] The hackers made off with "tens of thousands of files containing patients' personal medical information" from just

---

[12]     https://www.cbsnews.com/news/hackers-steal-medical-records-sell-them-on-dark-web/, last visited on August 18, 2021.
[13]     https://www.advisory.com/en/daily-briefing/2019/03/01/hackers, last visited on August 18, 2021.
[14]     Top 10 Biggest Healthcare Data Breaches of All Time | Digital Guardian, last visited on August 18, 2021.
[15]     Id.
[16]     https://www.nbcnews.com/tech/security/hackers-post-detailed-patient-medical-records-two-hospitals-dark-web-n1256887, last visited on August 18, 2021.

eleven hospitals.[17] In that breach, detailed medical data was posted, unencrypted, on the dark web including "at least tens of thousands of scanned diagnostic results and letters to insurers. One folder contains background checks on hospital employees. An Excel document titled 2018_colonoscopies has 102 full names, dates and details of the procedures, and a field to mark "yes" or "no" to whether the patient has a 'normal colon.'"[18] Such public posting of confidential PHI and PII may be part of a new trend to extort money from health care providers and/or individual patients, posting detailed medical records and other PII or PHI if victims refuse to pay.

26.     While Defendants' public statements indicate that they have been unable to identify the parties behind the Forefront Data Breach, reports indicate that the Forefront Data Breach may have been undertaken by a group using Cuba Ransomware, a ransomware platform known to have been active since at least January 2020.   The actors behind Cuba Ransomware are known for posting the data of victims who refuse to pay ransom requests.   Here, Defendants have not disclosed any ransom requests, which raises the possibility that the hackers intend to extort money not from Forefront, but from the patients whose PII and PHI Forefront was duty-bound to protect. Cuba Ransomware has been widely reported on, indeed, McAfee, one of the leading computer and network antivirus companies, posted a detailed report on the history of the Cuba Ransomware platform and the actors behind it.   The McAfee report indicated that Cuba Ransomware has been used to target a broad range of "financial institutions, industry, technology, and logistics organizations."   The actors using Cuba Ransomware have then either sold the hacked data or published it via a website.   Notably, according to at least two sources, hackers posted publicly about the hack at the end of June, 2021, and it appears that at least some portion of the data obtained in the Forefront Data Breach was posted publicly at the end of June, 2021.

E.     Forefront's Failure to Protect Consumer PHI is a Violation of HIPPA

---

[17]     https://hacked.com/hackers-medical-records/, last visited on August 18, 2021.
[18]     Hackers post detailed patient medical records from two hospitals to the dark web (nbcnews.com), last visited on August 18, 2021.

27.     Health care providers such as Forefront are bound by the HIPPA Privacy Rule, 45 CFR §§ 160, 164, which protects all "*"individually identifiable health information,"* or PHI "held or transmitted by a covered entity or its business associate, in any form or media, whether electronic, paper, or oral." PHI includes:

> . . . information that is a subset of health information, including demographic information collected from an individual, and:
>
> > (1) Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and
> >
> > (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and
> >
> > > (i) That identifies the individual; or
> > >
> > > (ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual and that identifies the individual or for which there is a reasonable basis to believe it can be used to identify the individual. Individually identifiable health information includes many common identifiers (e.g., name, address, birth date, Social Security Number).

45 CFR § 160.103. The privacy rule requires that covered entities, including health care providers like Forefront, provide sufficient safeguards to protect the privacy of the PHI entrusted to them by patients. Entities covered by the HIPPA Privacy Rule are required to report breaches of unsecured health information to the Secretary of Housing and Human Services ("HHS") as soon as possible after discovery of the breach. 45 CFR § 164.408. Here, Forefront did not report the breach to HHS until July 8, 2021, the same day that Defendants publicly acknowledged the Forefront Data Breach, despite acknowledging that they discovered the breach more than a month prior, on June 4, 2021.[19]

## V.     CLASS ALLEGATIONS

28.     Pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2), (b)(3), and (c)(4), Plaintiff asserts common law claims for negligence (Count I), negligence per se (Count II), breach of implied

---

[19]     https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf, last visited on August 18, 2021.

contract (Count III), breach of the implied covenant of good faith and fair dealing (Count IV), negligent misrepresentation (Count V), invasion of privacy (Count VI), and unjust enrichment (Count VII), on behalf of the following classes (collectively "the Classes"), defined as follows:

> **Nationwide Class**: All residents of the United States whose PII or PHI was accessed or otherwise compromised as a result of the Forefront Data Breach

> **Missouri Class:** All residents of the state of Missouri whose PII or PHI was accessed or otherwise compromised as a result of the Forefront Data Breach.

Members of the Nationwide Class and Missouri Class are referred to herein collectively as "Class Members."

29.     Excluded from the Classes are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns.  Also excluded from the Classes is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

30.     The proposed Classes meets the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

31.     **Numerosity**: The exact number of members of the Classes is unknown to Plaintiff at this time but Forefront operates approximately 114 medical centers in twenty-one states, employing several hundred board-certified dermatologists, moreover, in its report to HSS, Forefront acknowledged that the number of "Individuals Affected" by the Forefront Data Breach was 2,413,553, indicating that there are more than 2.4 million members of the Nationwide Class, making joinder of each individual impracticable. Moreover, Forefront operates no fewer than nine locations in the state of Missouri, suggesting that there are thousands of members of the Missouri Class, making joinder of each individual impracticable.  Ultimately, members of the Class will be easily identified through Defendants' records.

32.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the classes, and those questions predominate over any questions that may affect individual members of the classes. Common questions for the classes include:

a)     Whether Defendants failed to adequately safeguard Plaintiff's and the Class Members' PII and PHI;

b)     Whether Defendants failed to protect Plaintiff's and the Class Members' PII and PHI, as promised;

c)     Whether Defendants' computer system systems and data security practices used to protect Plaintiff's and the Class Members' PII and PHI violated HIPAA, federal, state and local laws, or Defendants' duties;

d)     Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard Plaintiff's and the Class Members' PII and PHI properly and/or as promised;

e)     Whether Defendants violated the consumer protection statutes, data breach notification statutes, state unfair insurance practice statutes, state insurance privacy statutes, and state medical privacy statutes applicable to Plaintiff and each of the Classes;

f)     Whether Defendants failed to notify Plaintiff and members of the Classes about the Forefront Data Breach as soon as practical and without delay after the Forefront Data Breach was discovered;

g)     Whether Defendants acted negligently in failing to safeguard Plaintiff's and the Class Members' PII and PHI;

h)     Whether Defendants entered into contracts with Plaintiff and the Class Members that included contract terms requiring Defendants to protect the confidentiality of Plaintiff's PII and PHI and have reasonable security measures;

i)     Whether Defendants' conduct described herein constitutes a breach of their

15

contracts with Plaintiff and the members of each of the Classes;

j)      Whether Defendants should retain the money paid by Plaintiff and members of each of the Classes to protect their PII and PHI;

k)      Whether Plaintiff and the Class Members are entitled to damages as a result of Defendants' wrongful conduct;

l)      Whether Plaintiff and the Class Members are entitled to restitution as a result of Defendants' wrongful conduct;

m)      What equitable relief is appropriate to redress Defendants' wrongful conduct; and

n)      What injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by Class Members.

33.      **Typicality**: Plaintiff's claims are typical of the claims of the members of the Classes. Plaintiff and the Class Members sustained damages as a result of Defendants' uniform wrongful conduct during transactions with them.

34.      **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Classes, and there are no defenses unique to Plaintiff. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the members of the proposed Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Classes.

35.      **Risks of Prosecuting Separate Actions**: This case is appropriate for certification because prosecution of separate actions would risk either inconsistent adjudications which would establish incompatible standards of conduct for the Defendants or would be dispositive of the interests of members of the proposed Classes. Furthermore, the Forefront Database still exists, and is still vulnerable to future attacks – one standard of conduct is needed to ensure the future safety of the Forefront Database.

16

36.     **Policies Generally Applicable to the Classes**: This case is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Plaintiff and proposed Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards members of the Classes, and making final injunctive relief appropriate with respect to the proposed Classes as a whole. Defendants' practices challenged herein apply to and affect the members of the Classes uniformly, and Plaintiff's challenge to those practices hinges on Defendants' conduct with respect to the proposed Classes as a whole, not on individual facts or law applicable only to Plaintiff.

37.     **Superiority**: This case is also appropriate for certification because class proceedings are superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and the members of the Classes. The injuries suffered by each individual member of the Classes are relatively small in comparison to the burden and expense of individual prosecution of the litigation necessitated by Defendants' conduct. Absent a class action, it would be virtually impossible for individual members of the Classes to obtain effective relief from Defendants. Even if Class Members could sustain individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties, including the Court, and would require duplicative consideration of the common legal and factual issues presented here. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court.

## VI.    CAUSES OF ACTION

## COUNT I – NEGLIGENCE

38.     Plaintiff incorporates the above allegations by reference.

39.     Defendants required Plaintiff and Class Members to submit PII and PHI in order to obtain insurance coverage and/or to receive health care services.

40.     Defendants knew, or should have known, of the risks inherent in collecting and storing the PII and PHI of Plaintiff and Class Members.

41.     As described above, Forefront owed duties of care to Plaintiff and Class Members whose PII and PHI had been entrusted with Forefront.

42.     Defendants breached their duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII and PHI.

43.     Defendants acted with wanton disregard for the security of Plaintiff and Class Members' PII and PHI. Defendants knew or should have known that Forefront had inadequate computer systems and data security practices to safeguard such information, and Defendants knew or should have known that hackers were attempting to access the PII and PHI in health care databases, such as Forefront's.

44.     A "special relationship" exists between Defendants and the Plaintiff and Class Members. Forefront entered into a "special relationship" with Plaintiff and Class Members because Forefront collected the Personal Identifying Information of Plaintiff and the Class Members and stored it in the Forefront Database – information that Plaintiff and the Class Members had been required to provide to Forefront.

45.     But for Defendants' wrongful and negligent breach of their duties owed to Plaintiff and the Class Members, Plaintiff and the Class Members would not have been injured.

46.     The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties, and that Defendants' breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their PII and PHI.

47.     As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

18

## COUNT II – NEGLIGENCE PER SE

48.     Plaintiff incorporates the above allegations by reference.

49.     Pursuant to the Federal Trade Commission Act (15 U.S.C. §45), Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII and PHI.

50.     Pursuant to HIPAA (42 U.S.C. §1302d et. seq.), Defendants had a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' PII and PHI.

51.     Defendants breached their duties to Plaintiff and Class Members under the Federal Trade Commission Act (15 U.S.C. § 45) and HIPAA (42 U.S.C. § 1302d *et. seq.*), by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII and PHI.

52.     Defendants' failure to comply with applicable laws and regulations constitutes negligence per se.

53.     But for Defendants' wrongful and negligent breach of their duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

54.     The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties, and that Defendants' breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their PII and PHI.

55.     As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT III – BREACH OF IMPLIED CONTRACT

56.     Plaintiff incorporates the above allegations by reference.

57.     Plaintiff and Class members entered into an implied contract with Forefront when they health care services from Forefront, for which they were required to provide PII and PHI to Forefront. The PII and PHI provided by Class Members to Forefront was governed by and subject to Forefront's Privacy Policy.

58.     Forefront agreed to safeguard and protect the PII and PHI of Plaintiff and Class Members and to timely and accurately notify them in the event that their PII or PHI was breached or otherwise compromised.

59.     Plaintiff and Class members entered into the implied contracts with the reasonable expectation that Defendants' data security practices and policies were reasonable and consistent with industry standards. Plaintiff and Class members believed that Forefront would use part of the monies paid to Forefront under the implied contracts to fund adequate and reasonable data security practices.

60.     Plaintiff and Class members would not have obtained health care services from Forefront or provided and entrusted their PII and PHI to Defendants in the absence of the implied contract or implied terms between them and Forefront. The safeguarding of the PII and PHI of Plaintiff and Class Members and prompt and sufficient notification of a breach was critical to realize the intent of the parties.

61.     Plaintiff and Class Members fully performed their obligations under the implied contracts with Forefront.

62.     Forefront breached its implied contracts with Plaintiff and Class members to protect their PII and PHI when it (1) failed to have security protocols and measures in place to protect that information; (2) disclosed that information to unauthorized third parties; and (3) failed to provide timely and accurate notice that their PII and PHI was compromised as a result of the Forefront Data Breach.

63.     As a direct and proximate result of Forefront's breaches of implied contract, Plaintiff and Class members sustained actual losses and damages as described in detail above, and are also entitled to recover nominal damages.

20

## COUNT IV – BREACH OF IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

64.     Plaintiff incorporates the above allegations by reference.

65.     Plaintiff and Class Members entered into valid, binding, and enforceable express or implied contracts with Forefront, as alleged above.

66.     These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations (both explicit and fairly implied) and not to impair the rights of the other parties to receive the rights, benefits, and reasonable expectations under the contracts. These included the covenants that Forefront would act fairly and in good faith in carrying out its contractual obligations to take reasonable measures to protect Plaintiff's PII and PHI and to comply with industry standards and federal and state laws and regulations.

67.     A "special relationship" exists between Forefront and the Plaintiff and Class Members. Forefront entered into a "special relationship" with Plaintiff and Class Members who sought medical treatment at Forefront dermatology centers and, in doing so, entrusted Forefront, pursuant to Forefront's requirements, with their PII and PHI.

68.     Despite this special relationship with Plaintiff, Forefront did not act in good faith and with fair dealing to protect Plaintiff's and Class Members' PII and PHI.

69.     Plaintiff and Class Members performed all conditions, covenants, obligations, and promises owed to Forefront.

70.     Forefront's failure to act in good faith in implementing the security measures required by the contracts denied Plaintiff and Class Members the full benefit of their bargain, and instead they received health insurance and related services that were less valuable than what they paid for and less valuable than their reasonable expectations under the contracts.  Plaintiff and Class Members were damaged in an amount at least equal to this overpayment.

71.     Forefront's failure to act in good faith in implementing the security measures required by the contracts also caused Plaintiff and Class Members to suffer actual damages

resulting from the theft of their PII and PHI, and remain at imminent risk of suffering additional damages in the future.

72.     Accordingly, Plaintiff and Class Members have been injured as a result of Forefront's breach of the covenant of good faith and fair dealing and are entitled to damages and/or restitution in an amount to be proven at trial.

## COUNT V – NEGLIGENT MISREPRESENTATION

73.     Plaintiff incorporates the above allegations by reference.

74.     Defendants negligently and recklessly misrepresented material facts, pertaining to the provision of health care services, to Plaintiff and Class Members by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Plaintiff's and Class Members' PII and PHI from unauthorized disclosure, release, data breaches, and theft.

75.     Defendants negligently and recklessly misrepresented material facts, pertaining to the provision of health care services, to Plaintiff and Class Members by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Plaintiff's and Class Members' PII and PHI.

76.     Because of multiple warnings about the inadequacy of their data privacy and security practices, Defendants either knew or should have known that their representations were not true.

77.     In reliance upon these misrepresentations, Plaintiff and Class Members obtained health care services from Defendants.

78.     Had Plaintiff and Class Members, as reasonable persons, known of Defendants' inadequate data privacy and security practices, or that Defendants were failing to comply with the requirements of federal and state laws pertaining to the privacy and security of Plaintiff's and Class Members' PII and PHI, they would not have purchased health services from Defendants, and would not have entrusted their PII and PHI to Defendants.

22

79.     As direct and proximate consequence of Defendants' negligent misrepresentations, Plaintiff and Class Members have suffered the injuries alleged above.

## COUNT VI – INVASION OF PRIVACY

80.     Plaintiff incorporates the above allegations by reference.

81.     Plaintiff and Class Members had a reasonable expectation that Defendants would maintain the privacy of the PII and PHI collected and maintained by Forefront.

82.     Forefront represented to Plaintiff and Class Members that it would not disclose their PII and PHI except in a handful of clearly defined and disclosed circumstances.

83.     Despite representations to the contrary, Defendants failed to protect and safeguard the PII and PHI entrusted to Forefront by Plaintiff and Class Members and in so doing,

84.     Intruded on the private and personal affairs of Plaintiff and Class Members in a manner highly offensive to a reasonable person;

85.     Invaded the privacy of Plaintiff and Class Members by disclosing, without authorization, the PHI and PII of Plaintiff and Class Members, inconsistent with both the purpose of the collection of the PII and PHI and inconsistent with the uses of said PII and PHI previously disclosed to Plaintiff and Class Members;

86.     Failing to provide sufficient security to protect the PII and PHI of Plaintiff and Class Members from unauthorized access; and

87.     Enabling, by failing to protect it sufficiently, the disclosure of PII and PHI without the consent of Plaintiff or Class Members.

88.     Forefront knew, or acted with reckless disregard in not knowing, that the PII and PHI collected from Plaintiff and Class Members was, because of its nature, subject to a significant risk of unauthorized access.

89.     Forefront knew, or acted with reckless disregard in not knowing, that a reasonable person would consider its failure to adequately protect and secure their PII and PHI to be highly offensive.

90.     Forefront's disclosure of Plaintiff's and Class Members' PII and PHI without their consent constituted a violation of the privacy of Plaintiff and Class Members.

91.     Forefront's failure to provide sufficient security to protect the PII and PHI of Plaintiff and Class Members, leading to unauthorized access to that data by unauthorized parties constituted the unlawful publication of that PII and PHI by Forefront.

92.     The PII and PHI disclosed in the Forefront Data Breach was not generally known to the public and is not a matter of legitimate public concern.

93.     Plaintiff and Class Members had a reasonable expectation in the privacy of the PII and PHI that they provided to Forefront. That reasonable expectation was thwarted by Defendants actions and inactions and Defendants' conduct constituted an invasion of Plaintiff's and Class Members' privacy.

94.     As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial as well as restitution and injunctive relief.

## COUNT VII – UNJUST ENRICHMENT

95.     Plaintiff incorporates the above allegations by reference.

96.     Plaintiff and Class Members conferred a monetary benefit on Defendants in the form of payments made for the purchase of health care services.

97.     Defendants appreciated or had knowledge of the benefits conferred upon them by Plaintiff and Class Members.

98.     The payments for healthcare services that Plaintiff and Class Members paid (directly or indirectly) to Defendants should have been used by Defendants, in part, to pay for the administrative costs of reasonable data privacy and security practices and procedures.

99.     As a result of Defendants' conduct, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between the health care services with the reasonable data privacy and security practices and procedures that Plaintiff and Class Members

paid for, and the inadequate health care services without reasonable data privacy and security practices and procedures that they received.

100. Under principals of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and Class Members because Defendants failed to implement (or adequately implement) the data privacy and security practices and procedures that Plaintiff and Class Members paid for and that were otherwise mandated by HIPAA regulations, federal, state and local laws, and industry standards.

101. Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by Defendants.

102. A constructive trust should be imposed upon all unlawful or inequitable sums received by Defendants traceable to Plaintiff and Class Members.

103. Plaintiff and Class Members have no adequate remedy at law.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of themselves and the Class Members, seek the following relief:

A.       An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Classes as requested herein, appointed the undersigned as Class counsel, and finding that Plaintiff is the proper representatives of the Classes requested herein.

B.       Plaintiff requests injunctive relief.  Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class Members, including:

(i) an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

(ii) requiring Defendants to protect all data collected or received through the course of their business in accordance with HIPAA regulations, other federal, state and local laws, and best practices under industry standards;

25

(iii) requiring Defendants to design, maintain, and test their computer systems to ensure that PII and PHI in their possession is adequately secured and protected;

(iv) requiring Defendants to disclose any future data breaches in a timely and accurate manner;

(v) requiring Defendants to engage third-party security auditors as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis and ordering them to promptly correct any problems or issues detected by these auditors;

(vi) requiring Defendants to audit, test, and train their security personnel to run automated security monitoring, aggregating, filtering and reporting on log information in a unified manner;

(vii) requiring Defendants to implement multi-factor authentication requirements;

(viii) requiring Defendants' employees to change their passwords on a timely and regular basis, consistent with best practices;

(ix) requiring Defendants to encrypt all PII and PHI;

(x) requiring Defendants to audit, test, and train its security personnel regarding any new or modified procedures;

(xi) requiring Forefront to segment data by, among other things, creating firewalls and access controls so that if one area of the Forefront network is compromised, hackers cannot gain access to other portions of Forefront's systems;

(xii) requiring Defendants to purge, delete, and destroy in a reasonably secure and timely manner PII and PHI no longer necessary for their provision of services;

(xiii) requiring Defendants to conduct regular database scanning and securing checks;

(xiv) requiring Defendants to routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

26

(xv) requiring Defendants to provide lifetime credit monitoring and identity theft repair services to members of the Classes; and

(xvi) requiring Defendants to educate all Class Members about the threats they face as a result of the loss of their PII and PHI to third parties, as well as steps Class Members must take to protect themselves.

C.    Plaintiff also requests actual damages, punitive damages, treble damages, statutory damages, exemplary damages, equitable relief, restitution, disgorgement of profits, attorney's fees, statutory costs, and such other and further relief as is just and proper.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

Dated:  August 19, 2021                    Respectfully submitted,

**BARRACK, RODOS & BACINE**
STEPHEN R. BASSER (WIED No. 121590)
SAMUEL M. WARD (WIED No. 216562)
600 West Broadway, Suite 900
San Diego, CA  92101
Telephone: (619) 230-0800
Facsimile:   (619) 230-1874
sbasser@barrack.com
sward@barrack.com


**EMERSON FIRM, PLLC**
JOHN G. EMERSON*
2500 Wilcrest Drive
Suite 300
Houston, TX 77042
Telephone:  (800) 551-8649
Facsimile: (501) 286-4659
jemerson@emersonfirm.com

*Counsel for Plaintiff Milan Kunzelmann*

*Application for admission to be filed

27